THE CLAY DRILLING COMPANY OF TEXAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6927. Promulgated March 4, 1946.

*A. E. Brooks, Esq.*, and *Brandon Stone, Esq.*, for the petitioner.
*Donald Abbey, Esq.*, for the respondent.

328

**OPINION.**

Black, *Judge*: We are not here concerned with the amounts which the Herschbachs owed the Continental Supply Co. or what petitioner owed the Supply Co. Considerable of the language of the agreement included in our findings of fact relates to that indebtedness, but it is in no way involved in this proceeding. We have but one issue to decide here, and that is whether petitioner is entitled to a bad debt deduction in the taxable year aggregating $13,946.98. This aggregate is made up of an alleged account against John L. Herschbach of $11,563.67 and against E. Fred Herschbach of $2,383.31. The applicable statute and regulations are printed in the margin.[1]

The Commissioner concedes that petitioner charged off its books as a bad debt loss during its fiscal year ended April 30, 1942, accounts aggregating $13,946.98 which were carried on its books against John L. Herschbach and E. Fred Herschbach. The Commissioner contends, however, that these two accounts did not represent "debts" which were due petitioner at the time they were charged off within the meaning of the statute and the applicable regulations. The Commissioner does not dispute that these accounts when originally incurred by the Herschbachs represented debts owing by them to petitioner. He contends, however, that when the contract of November 25, 1938, was entered into by John L. Herschbach, E. Fred Herschbach, and R. G. Clay, which account was subsequently ratified and

---

[1] SEC. 23 [I. R. C.]. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  \*     \*     \*     \*     \*     \*     \*
  (k) BAD DEBTS.—
  (1) GENERAL RULE.—Debts which become worthless within the taxable year; \* \* \*
  SEC. 29.23 (k)–1 [Regulations 111]. *Bad debts.*—(a) Bad debts may be treated in either of two ways—
  (1) By a deduction from income in respect of debts which become worthless in whole or in part, \* \* \*
  \*     \*     \*     \*     \*     \*     \*
  (b) \* \* \*
  Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction. \* \* \*
  \*     \*     \*     \*     \*     \*     \*
  (d) The provisions of subsections (a) and (b) of this section apply to all taxpayers, except that \* \* \* (3) in the case of taxpayers other than banks as defined in section 104, the term "debts" as used in such subdivisions means obligations to pay fixed or determinable sums of money which are not evidenced by securities as defined in section 29.23 (k)—4.

confirmed at a stockholders' meeting of the corporation, the indebtedness of the Herschbachs to the corporation was canceled and forgiven and no longer existed as debts. The basis for this contention is that the contract in question provided a method of payment by the Herschbachs to the corporation of their indebtedness by means of commissions on certain drilling contracts which were to be tendered to the corporation by the Herschbachs and that this contract further provided: "It is further agreed and understood that the aforesaid sum of $16,500 is payable only as above set out and shall not be construed as a money or personal obligation payable by Herschbach."

Respondent lays great stress in his brief on this latter provision. He says: "In agreeing that the Herschbach accounts were not to be construed as a personal obligation, they ceased to be debts." If that is true, respondent should prevail, because petitioner would have no debts against the Herschbachs to become worthless in the taxable year and therefore nothing to deduct. Respondent in support of his contention cites *Emil Weitzner*, 12 B. T. A. 724, and quotes from that case as follows:

It is elementary that one of the essential prerequisites to a bad debt deduction is that the debt must have an existence in fact. *Luke & Fleming, Inc.*, 1 B. T. A. 12. There are many different transactions out of which the relation of debtor and creditor may arise and so there are many definitions of the word "debt." It is a word that is not susceptible of definition so as to fit every situation and as far as we know there has been no comprehensive judicial determination of the meaning of the word. However, in all of the definitions that are given there is the underlying thought of an obligation to pay. The existence of an obligation is the *sine qua non* of a debt. * * *

Respondent also cites *Ambrose D. Henry*, 8 B. T. A. 1089, and quotes from that case as follows:

* * * The word "debt" * * * has been defined to mean "that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; that of which payment is liable to be exacted; due; obligation; liability." * * * The word "debt" has been defined to mean "every claim and demand upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action." * * *

As we have already pointed out, certainly the debts against the Herschbachs on petitioner's books at the time the November 25, 1938, contract was entered into represented "debts" within the meaning of the applicable statute and Commissioner's regulations. We do not understand respondent to contend otherwise. These debts were not, in our opinion, canceled or forgiven by the terms of the contract which was entered into. That there was no intention by the parties that the debts should be canceled or forgiven seems to be shown by the fact that the corporation continued to carry the accounts on its books after the contract of November 25, 1938, as before, and in 1939 $1,288.25

on each acount was paid to petitioner in the manner which had been agreed upon and was duly credited to each account. Also in the supplemental agreement entered into by petitioner and the Herschbachs on April 21, 1939, relating to certain wells to be drilled by petitioner for Aloco Oil Co., it was agreed: "All monies accruing from these payments shall be disbursed as follows: Twelve & one-half cents per foot (12½ cents per foot) on each well (but in no event to exceed $625.00 on each well) is to be credited to the indebtedness now due this Company by yourselves."

It seems to us that the debts of the Herschbachs to petitioner continued to exist, payable, it is true, only in the manner agreed upon. We know of no law which is to the effect that a debt is canceled and forgiven merely because the manner of its payment is restricted and it is agreed that the debtor shall not be personally liable if the debt is not fully paid in that manner. Both parties concede that they know of no case exactly in point. Our search has not disclosed any. In *Riverview State Bank*, 1 T. C. 1147, we held, following several circuit court decisions cited in our report, that interest on special tax bills issued by the city of Kansas City, Kansas, which was levied and assessed by the city as a tax and was payable to the holders of the tax bills by the city, but was not payable out of the general funds of the city, was tax exempt as interest upon the obligations of a political subdivision of the state. In that case it was the Commissioner's contention that, since no obligation for payment of either principal or interest on the tax bills rested directly upon the city, they were not "obligations" of the city within the meaning of the statute. We held against such contention. Of course the question we have here to decide is entirely different from the question which was present in the *Riverview State Bank* case, and yet we think the underlying reasoning in that case is of some help here. In some earlier cases involving the same question of exemption from taxation which we had in the *Riverview State Bank* case we had held that the bonds were not exempt because they were payable only out of special taxes and not unconditionally payable by the municipality—therefore, were not "obligations" of the municipality within the meaning of the applicable statute. We were reversed in some of these cases, the Circuit Court of Appeals holding that the bonds were "obligations" of the municipalities even though payable only out of special tax bills and in no other manner. See the cases cited in *Riverview State Bank*, *supra.*

Along somewhat the same line of reasoning, we think it is reasonable to hold that these accounts due by the Herschbachs to petitioner continued to be debts or obligations owed by the Herschbachs to petitioner, even though payable only in a special way and not out of the debtor's "general funds," so to speak. We therefore sustain petitioner

on this phase of the issue. Petitioner not only has the burden of proof to show that it had valid and existing debts against the Herschbachs in the amounts claimed, but that these debts became worthless in the taxable year. Respondent contends that petitioner has not sustained its burden of proof in this respect and lays emphasis upon the fact that petitioner did not make demand upon the Herschbachs for payment and did not institute legal action against them for payment. Respondent on this point cites *Edward H. Moore*, 22 B. T. A. 366; petition for review dismissed, 59 Fed. (2d) 1069.

In reply to this contention petitioner points out that the Illinois Oil Co. was the sole operating medium of the Herschbachs and that it went into bankruptcy November 24, 1941, and the Herschbachs were thereby put out of the oil business. Petitioner's president testified at the hearing to the effect that up until the time that Illinois went into bankruptcy he considered there was a reasonable prospect that petitioner would collect all or at least a good part of its debt against the Herschbachs in the manner which had been agreed upon. He said that, after Illinois went into bankruptcy and the Herschbachs were thereby put out of the oil business, he concluded that nothing more would be collected on the accounts and he directed that the accounts be charged off as worthless. Subsequent events verified his judgment, because nothing more was collected on the accounts. We do not see where suit by petitioner against the Herschbachs would have availed anything. They were not personally liable for the debts and, since they were put out of the oil business by the bankruptcy of their operating company, there was no reason to expect they would tender any further oil drilling contracts to petitioner on which they could collect a commission. Under such circumstances we think it is reasonable to hold that the debts became worthless in petitioner's fiscal year ended April 30, 1942. Cf. *Robert S. Dennison*, 4 T. C. 806. We have, therefore, concluded that on the evidence in the record the debts in question became worthless in the taxable year and petitioner is entitled to the deduction claimed.

*Decision will be entered under Rule 50.*