DISTRICT BOND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108147.  Promulgated March 30, 1943.

*Richard W. Lund, Esq.*, for the petitioner.
*Samuel Taylor, Esq.*, for the respondent.

838

ARUNDELL, *Judge:* The Commissioner determined deficiencies in income tax for the years 1938 and 1939 in the respective amounts of $5,737.38 and $61.06. Petitioner disputes the correctness of only a portion of the deficiencies, claiming that amounts received as delinquency penalties and as premiums on the retirement of bonds were in reality tax-exempt interest upon the obligations of a state or its political subdivisions. The facts are stipulated.

Petitioner, a California corporation, filed its returns for 1938 and 1939 with the collector for the sixth district of California. During those years it owned a number of bonds issued by various California municipalities under the California Improvement Act of 1911 as amended. The bonds had been issued between January 1, 1924, and January 1, 1933, for terms of 10 years with interest at 7 percent per annum. Principal coupons and interest coupons were attached to each bond. The principal coupons provided for the payment of 10 percent of the principal amount of the bond on each successive second day of January, upon surrender of the applicable coupon; and the interest coupons provided for the payment on the second day of January and July of specified variable amounts representing semi-annual interest at the rate of 7 percent on the balance of the unmatured principal.

In conformity with the laws of California under which it was issued, each bond contained a provision that in case of any default in the payment of principal or interest "there shall be immediately added to such defaulted amount, five per cent of the amount thereof, and on the first day of each month following such default there shall be added a further penalty of one per cent of such defaulted amount. The city shall be entitled to one-half the penalty first imposed, namely, two and one-half per cent, and the other two and one-half per cent and all subsequent penalties shall be paid to the holder of the bond along with and as a part of such defaulted payment." Each bond further provided that in case of default the holder would be entitled to declare the whole amount due and to have the lot or parcel of land securing the bond advertised and sold as provided by law.

During the year 1938 petitioner received $6,198.11 pursuant to the quoted provision of the bonds, $1,033.11 representing the initial 2½ percent of the amount of delinquencies and $5,165 representing 1 percent of such delinquencies added on the first of each succeeding month. During 1939 petitioner received $1,575.16 by reason of delinquencies, $262.53 representing the initial 2½ percent and $1,312.63 representing the 1 percent per month subsequently added. Petitioner received no sums on account of the bonds other than the payments specified in this paragraph and payment of the principal and interest coupons.

Each of the bonds also provided, as required by the Improvement Act, that the owner or any person interested in the lot or parcel of land described in the bond could redeem the same at any time before maturity by paying to the treasurer of the city for the holder of the bond the amount then unpaid on the principal, "with interest thereon calculated up to the due date of the next maturing interest coupon, and all penalties accrued and unpaid, together with interest for six months at the rate named in said bond."

During 1938 petitioner receiver $643.44 representing amounts paid on redemption of bonds prior to maturity in addition to the payment of the principal due. Of this sum $214.48 was equivalent to interest at the rate of 7 percent from the due date of the last preceding interest payment to the date of redemption, and the balance, $428.96, was equivalent to 7 percent interest on the remaining principal paid on redemption, from the date of redemption to 6 months after the due date of the next maturing interest coupon. During 1939 petitioner similarly received $145.62, of which $48.57 was equivalent to interest at 7 percent from the preceding interest coupon date to the date of redemption, and the balance of $97.15 was equivalent to interest at 7 percent from the date of redemption to 6 months following the next coupon date after redemption.

Respondent has added the amounts of $428.96 and $97.15 to petitioner's gross income for 1938 and 1939, being the amounts representing interest after redemption of the bonds. He concedes that sums received on redemption, to the extent they represent interest from the last payment of interest to the date of redemption, are exempt from tax. He has also added to gross income the so-called penalties received in the tax years.

The Revenue Act of 1938, like its predecessors, exempts from tax the interest upon obligations of a state or any political subdivision thereof. Section 22 (b) (4).[1] Interest on the bonds under consideration are tax-exempt. *Bryant* v. *Commissioner*, 111 Fed. (2d) 9; *Avery* v. *Commissioner*, 111 Fed. (2d) 19; *District Bond Co.* v. *Commissioner*, 113 Fed. (2d) 347. The present issue is whether the

---

[1] (b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title :

\* \* \* \* \* \* \*

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia ; or (B) obligations of a corporation organized under Act of Congress, if such corporation is an instrumentality of the United States ; or (C) the obligations of the United States or its possessions. Every person owning any of the obligations enumerated in clause (A), (B), or (C) shall, in the return required by this title, submit a statement showing the number and amount of such obligations owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit) and in the case of obligations of a corporation organized under Act of Congress, the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt from the taxes imposed by this title ;

\* \* \* \* \* \* \*

payments in question were interest and, therefore, exempt from tax.

We are of opinion that none of the payments constituted interest as that term is used in section 22 (b) (4). The 5 percent penalty that was added immediately to defaulted amounts not only is designated a penalty in the bonds and statute but lacks the usual characteristics of interest. Clearly the one-half that goes to the city would not be regarded as interest, for the city has loaned no money. Moreover, the full 5 percent is a "fixed *ad valorem* amount taking no account of time," *Meilink* v. *Unemployment Reserves Commission*, 314 U. S. 564, payable in full though the default be cured the following day. It is therefore a penalty payable "without reference to the actual damage sustained." *Agudo* v. *Monterey County*, 13 Cal. (2d) 285; 89 Pac. (2d) 400.

Nor may we regard as interest the additional amounts received upon the redemption of bonds prior to maturity. Upon the retirement of bonds at a price in excess of cost, the resulting profit is treated for Federal income tax purposes as capital gain. Section 117 (f) of the 1938 Act. The amount of the taxable gain is computed, as respondent has in the present case, by eliminating from the proceeds received the amount representing interest accrued to the date of retirement, for such amount, in the case of municipal securities, is conceded by the Commissioner to be tax-exempt interest. G. C. M. 21890, 1940-1 C. B. 85. With this exception, however, the proceeds are treated as receipts from the sale or exchange of the bonds, and there is nothing in the statute to remove premiums from this treatment. In the instant case, while the additional payment upon such retirement was measured by interest from the date of redemption to six months after the next succeeding interest coupon date, we think it clear that the additional payment was not interest within the ordinary meaning of the word or within section 22 (b) (4). It was not compensation paid for the use of borrowed money, but was in effect a bonus or premium for the premature relinquishment of the obligation in order that the debtor might be relieved of the obligation to pay interest in the future. G. C. M. 21890, *supra.*

This leaves only the penalty of 1 percent a month that was added to defaulted amounts. Petitioner's principal reliance in this connection is upon the fact that the bonds contained no provision for the payment of interest as such upon amounts remaining unpaid after maturity. The contention is that 1 percent a month, though denominated a penalty, was in fact provided for as interest or as a sum in lieu of interest, intended as compensation to the bondholder for the continued detention of his money. Inherent in this view is the thought that it is fair and reasonable to suppose that interest, or a sum in lieu thereof, was intended to be paid after maturity. On the contrary, however, statutes such as the California act under

consideration are in effect the exercise of a state's taxing power upon its citizens, and are not to be construed as requiring the payment of interest after maturity unless such an obligation is expressly or by fair implication placed upon the citizen. *Meyer* v. *City and County of San Francisco,* 150 Cal. 131; 88 Pac. 722; *Irvine* v. *Gibson,* 104 Pac. (2d) 697..

Various sections of the California Improvement Act, as amended, impair the validity of the basic premise upon which petitioner's argument rests. Sections 67–70 (Deering's General Laws of California, 1937, vol. II, Act 8199) provide that upon default in payment of principal or interest the holder of the bond may declare the whole amount due and demand in writing that the city treasurer sell the parcel of real estate securing the bond. In that event the treasurer is directed to publish a notice of sale stating the amount due on the bond, which shall consist of the unpaid principal, "interest calculated and compounded semiannually up to the day on which the notice is dated at the interest rate named in said bond upon the unpaid principal for the full period for which no interest has been paid," plus the amount of accrued penalties.[2] To avoid the sale it becomes necessary for the debtor to pay the whole amount of principal remaining unpaid, interest thereon to the date of such payment, and all accrued penalties.[3]

As a further, separate and distinct remedy the bondholder is permitted by section 76 (a) [4] to institute suit to foreclose the lien of the

---

[2] Section 68 prescribes that the notice published by the treasurer shall be in part as follows:
* * * The amount due on said bond up to the date of this notice is as follows: Due on the principal thereof, $____ dollars; due on account of interest $____ dollars (here set forth the interest calculated and compounded semiannually up to the day on which the notice is dated at the interest rate named in said bond upon the unpaid principal for the full period for which no interest has been paid) due on account of penalties $____ dollars. Total amount due on said bond (here set forth the total of the foregoing items).
In order to avoid this sale, payment of the total amount above named will be required together with the cost of publications made before such payment and the additional interest accruing up to the date of payment. * * *
In the event of sale, such sale will include interest in addition to the above total amount due accruing up to date of sale, * * *

[3] Section 70 provides, in part:
* * * any person interested in the lot or parcel of land described in the notice of sale may at any time prior to the sale, pay the whole amount of principal of said bond remaining unpaid, the interest thereon compounded semi-annually up to the date of such payment, at the rate named in said bond upon such amount of said principal remaining unpaid for the whole period for which interest has not been paid, and all penalties which have accrued, together with the cost of the publication of the notice of sale; * * *.

[4] Section 76 (a) provides, in part:
* * * by way of a separate, distinct and cumulative remedy, the holder of any bond * * * may * * * file and maintain a suit to foreclose the lien of the bond and recover the amount due thereon; * * *
    *      *      *      *      *      *      *
* * * The court in said suit shall have the power to adjudge and decree a lien against the lot or parcel of land covered by said bond and to cause said premises to be sold as in other cases of the sale of real estate by the process of said court to satisfy and discharge such bond and lien, and the amount of interest and penalties due shall be calculated in the same manner hereinbefore set forth in sections 62 and 68 hereof, up to the date of the judgment.

bond, in which event he is entitled to principal together with interest and penalties "calculated in the same manner hereinbefore set forth in sections 62 and 68 hereof, up to the date of the judgment."

The scheme of the statute appears reasonably clear. Upon default in the payment of principal or interest, section 62 [5] directs the treasurer to add to the defaulted amount the 5 percent penalty discussed above and in addition a further penalty of 1 percent a month. The bond provides, in conformity with the statute, that one-half of the initial penalty and all of the subsequent penalties shall be paid to the bondholder along with the defaulted payments. If the bondholder sits back and waits for the default to be made good, these are the only sums he is entitled to receive, namely, the defaulted amounts and the penalties, for in such event the statute does not impose a duty on the debtor to pay interest on the defaulted amounts in addition to the penalties. However, if the bondholder desires to avail himself of rights conferred upon him by the statute, he may procure a sale of the real estate by the city treasurer or institute a foreclosure suit, and in either of these cases he will receive not only the penalties that are in question here, but interest upon the unpaid principal up to the date of sale or the date of judgment.

To complete the statutory scheme it is to be noted that if a bond is redeemed before maturity the holder is entitled to receive principal, interest calculated from the date of the last payment thereof to six months after the next interest coupon date, and, in addition to this, "all penalties accrued and unpaid."

In the light of these provisions we do not think it can be said that the California Legislature used the word "penalties" inadvisedly or that by requiring the payment of penalties it was providing a sum in lieu of interest. In any of the circumstances detailed above the bondholder would receive the penalties as well as interest. A decision here that the sum petitioner received was tax-exempt interest would present formidable difficulties in another case if a taxpayer received amounts designated as interest and the penalties as well. Consistency would seem to prohibit the treatment of an item as interest in one instance and the same item as penalty in another. It may be true, as petitioner asserts, that both penalties and interest are provided as means of compensating the bondholder for expenses, risks, and the detention of his money. But the statute exempts only interest. The fact that petitioner, pursuing the course it did, failed

---

[5] * * * Should any payment of principal * * * or of interest thereon be not paid * * *, the city treasurer shall after the close of business on said due date add * * * a penalty of one per cent [5 percent on bonds involved herein issued prior to 1933] of the total amount of such delinquency, and at the beginning of business on the first day of each succeeding month * * *, he shall add an additional penalty of one per cent of the amount of such delinquency, and said treasurer shall collect such penalties with and as a part of such delinquent payment.

to receive interest as such upon delinquent amounts does not mean that a sum imposed upon the debtor by statute and designated a penalty for nonpayment was in fact interest.

A further significant factor to be observed is that the penalty is in the amount of 12 percent per annum, greatly in excess of the rate of 7 percent provided in the bonds as interest. While it is no doubt true, as petitioner urges, that a mere increase in rate after maturity does not *per se* make a penalty out of what is termed "interest," *Meilink* v. *Unemployment Reserves Commission, supra; In re Semon,* 80 Fed. (2d) 81, the fact of such a large increase in rate denotes an element of penalty and is certainly an added reason for refusing to hold that what is termed a penalty is in fact interest. It is also to be observed that the interest called for upon foreclosure or governmental sale is specified in the statute as interest at the rate named in the bond.

Petitioner is seeking an exemption from tax, which is not lightly to be inferred and "will not be applied to a particular case unless granted in the statute in plain terms." *United States Trust Co. of New York* v. *Anderson,* 65 Fed. (2d) 575; certiorari denied, 290 U. S. 683. We do not think petitioner has brought itself within the exemption provision. The exemption of interest on state obligations was permitted in part to avoid constitutional doubts with respect to imposing an undue burden upon the borrowing power of states. See *Willcuts* v. *Bunn,* 282 U. S. 216. Taxation of ordinary interest was contemplated as casting such a burden, but we do not think Congress had in mind the exemption of a penalty, imposed and designated as such, for default in the payment of obligations at maturity. In our opinion this is so even though interest as such may not have been provided for after maturity, and particularly it is true where, as here, the state statute draws a clear distinction between interest and penalties and permits the collection of both in certain circumstances.

Respondent's determination is accordingly affirmed.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

DISNEY, *J.,* dissenting: I find myself unable to agree with the conclusion of the majority with respect to the items of $428.96 and $97.15 as to which exemption as interest is denied. These amounts represented what the statute of California and the bond denominated as interest; that is to say, the person redeeming the bond was required to pay principal "with interest thereon calculated up to the due date of the next maturing interest coupon, and all penalties accrued and unpaid, together with interest for six months at the rate named in said bond." My first thought is that this is a situation where the

terminology used by the parties should, if ever, receive respect, and that the rule often announced that the fact, and not the terminology used, is decisive, should be here very sparingly applied. Interest is a matter of contract, or, in the absence of contract, a matter of law, under many decisions. Here, in a contract, and as provided by law, the amounts to which I have above referred were specifically termed "interest." The purchaser of the bond contracted for interest, and so contracted in the light of the law, which, since the bond was issued by a municipality, provided that such interest would be tax free. Under such circumstances I am of the opinion that the term "interest" was an integral and important part of the contract, and that the taxpayer is entitled to the results that flow from that expression, under section 22 (b) (4) of the Revenue Act of 1938. To hold otherwise seems to me, at least, to smack of impairment of contract.

Secondly, even without relying upon any weight given to the fact that statute and bond issued the taxpayer provided that what was received would be interest, it did in fact receive interest under the usual definition thereof. In *Fall River Electric Light Co.*, 23 B. T. A. 168, 171, we adopted what we said was a definite and well accepted meaning for the term "the compensation allowed by law or fixed by the parties for use, or forbearance, or detention of money." Can it be denied that the two items above noted were not allowed by law and fixed by the parties as interest? Or, can it be denied that the law allowed and the parties fixed those amounts for the use of money? The bondholder allowed the use of his money and because of such use he received back the principal together with the above noted items. It is true that in general the interest was to be 7 percent, but there is no suggestion that interest at a greater rate was illegal and it appears to me that the bondholder simply received a rate of interest slightly greater than 7 percent for the use of his money from the time of his investment up to the time he received it again, and that what he received is well within the above definition. All that the bondholder put into the matter was money. In consideration thereof he received back certain money, and what he received does not fail to be interest, that is, consideration for the use of money, merely because it is measured by a term slightly longer than the actual use of the funds invested. Most particularly in the situation here at hand where statute and contract provide for interest, entailing the payment of the sums here being considered, and where the bondholder's investment may well have been actuated by the nontaxibility of the interest designated by statute and the bond, I see more reason for holding that the sums received were compensation for the use of the money invested than for thinking that they comprise something in the nature of a premium or penalty for prepayment of the bond. Where the law and the

parties fix the sums as interest, and the principal was, in fact, used for a long period of time, I consider its use compensated for by the amount received and find unreality in the view that the bondholder was paid for anything but the use of his money. I therefore respectfully dissent.