THE RIVERVIEW STATE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 112140. Promulgated May 18, 1943.

*N. E. Snyder, Esq.*, and *John W. Rader, C. P. A.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

SMITH, *Judge*: This proceeding involves income and excess profits tax deficiencies for 1938 and 1939 as follows:

| Year | Deficiency | |
|---|---|---|
| | Income tax | Excess profits tax |
| 1938 | $255.70 | $92.98 |
| 1939 | 3,897.56 | |

The issue for our determination is whether the interest payments which petitioner received during the taxable years on special tax bills issued by the city of Kansas City, Kansas, are exempt from taxation as interest upon the obligations of a political subdivision of the State of Kansas. The material facts pertaining to this issue have been stipulated.

It has also been stipulated that petitioner is entitled to a loss deduction in 1939 of $3,910.73 representing the unrecovered cost basis of certain special tax bills charged off as worthless in that year, and that petitioner is taxable on certain specified portions of bad debt recoveries in each of the taxable years.

Petitioner is a state banking corporation, organized under the laws of the State of Kansas, with its principal office in Kansas City, Kansas. It filed its income and excess profits tax returns for 1938 and 1939 with the collector of internal revenue for the district of Kansas.

Prior to the taxable years here involved petitioner purchased a number of interest-bearing "special tax bills" which had been issued by the city of Kansas City to various contractors in payment for street improvements. The issuance of special tax bills for payment of street improvements in cities of over 110,000 population (the population of Kansas City at all times here material was in excess of 110,000) was authorized by chapter 133 of the Laws of Kansas, 1927, and amendments thereto.

Under the Kansas statutes cities of a population of 110,000 or over are authorized to pay the cost of street and alley improvements by issuing special tax bills payable in not over ten annual installments, with interest of not more than 8 percent per annum. It is provided that the tax bills shall become a lien upon the improved property therein described, superior to all other liens "excepting the lien for general taxes," with which they are concurrent. It is further provided that:

* * * no liability of whatever character on account of said tax bills shall attach to or be a claim against the city therefor, except that it shall be the duty of the governing body of the city to levy by ordinance the total amount of said tax bills against the property charged therewith, and cause each installment of such tax bills in its order, with interest on the unpaid portion thereof to August 1 of the following year, to be duly certified by the city clerk to the county clerk, to be placed on the tax roll for collection as other taxes for the benefit of the legal holder of such special tax bills as hereinafter provided for. * * *

The tax bills become negotiable when endorsed to bearer by the contractor to whom issued. General Statutes of Kansas, 1935, § 13–1079. See also §§ 13–1084 and 13–1085.

The tax bills under consideration were issued by the municipality directly to the contractors upon completion of the authorized improvements and they became a lien upon the specific private property so benefited. Petitioner purchased the tax bills from the contractors at or below par. Interest was paid to the petitioner by the municipality in 1938 and 1939 on the tax bills which petitioner owned in the respective amounts of $12,611.87 and $16,847.88. These amounts were not reported by petitioner in its returns for either of the years but were added to gross income by the respondent in his determination of the deficiencies here in dispute. Petitioner's returns were made on the cash basis.

It is the petitioner's contention that the interest payments which it received on the tax bills in question in 1938 and 1939 were interest on obligations of the city of Kansas City, a political subdivision of the State of Kansas, and are therefore exempt from income tax under section 22 (b) (4) of the Revenue Act of 1938.

The respondent contends that, since no obligation for payment of either principal or interest on the tax bills rested directly upon the

city, they were not "obligations" of the city within the meaning of the statute. He cites *Standard Investment Co.*, 36 B. T. A. 156, and *T. I. Stoner*, 37 B. T. A. 249, in support of his contention. In those cases we held that the interest payments on special tax bills issued by Kansas City, Missouri, and St. Louis, Missouri (*Standard Investment Co.*), and Tulsa, Oklahoma (*T. I. Stoner*), for which the cities were not directly liable were not tax exempt.

In two previously decided cases, which we sought to distinguish in *Standard Investment Co.*, *supra*, namely, *Michael Pontarelli*, 35 B. T. A. 872, and *Carey-Reed Co.*, 36 B. T. A. 36, we had held tax exempt the interest on certain street and sewer improvement bonds issued by cities in the States of Illinois and Kentucky, although those cities were liable for the interest payments only out of special assessments levied and collected upon properties presumed to be benefited. Both of those cases were appealed by the Commissioner and were affirmed. See *Commissioner* v. *Pontarelli* (C. C. A., 7th Cir.), 97 Fed. (2d) 793, and *Commissioner* v. *Carey-Reed Co.* (C. C. A., 6th Cir.), 101 Fed. (2d) 602. A number of additional cases, involving for the most part the exemption of interest on public improvement bonds, have since been decided. In *Milo W. Bekins et al., Executors*, 38 B. T. A. 604, there were several different types of public improvement bonds issued under various California statutes. We held, following *Standard Investment Co.*, *supra*, and *T. I. Stoner*, *supra*, that the interest on some of the bonds for which the city was not directly liable was not tax exempt, and further held, following *Michael Pontarelli*, *supra*, that the interest on others of the bonds which was payable by the city, but only out of the "special fund" to be collected by the city "as a tax," was exempt. The general funds or credit of the city were not subject to payment of any of the bond obligations. There was no appeal taken in the *Bekins* case.

In *Susanna Bixby Bryant*, 38 B. T. A. 618, we held not tax exempt the interest on improvement bonds issued by the city and county of Los Angeles, California, similar to those which we had held not to belong to the tax exempt class in the *Bekins* case. On appeal the Circuit Court of Appeals for the Ninth Circuit reversed the Board in *Bryant* v. *Commissioner*, 111 Fed. (2d) 9, thus in effect reversing the *Bekins* case in so far as any of the interest on the bonds there under consideration was held subject to tax. The court in its opinion definitely rejected the distinction which the Board had made between the different types of public improvement bonds.

*Bryant* v. *Commissioner*, *supra*, was followed in *Avery* v. *Commissioner* (C. C. A., 9th Cir.), 111 Fed. (2d) 19, which reversed a memorandum opinion of the Board, and in *District Bond Co.* v. *Commissioner* (C. C. A., 9th Cir.), 113 Fed. (2d) 347, reversing on this point

39 B. T. A. 739. In both cases the Board had held that the interest on certain California improvement bonds was not within the tax exemption. See also *Morrison Bond Co., Ltd.*, 42 B. T. A. 720 (modifying *Morrison Bond Co., Ltd.*, 41 B. T. A. 669, to conform to *Bryant v. Commissioner, supra*); *William J. Garland*, 42 B. T. A. 324; and *District Bond Co.*, 1 T. C. 837.

While the interest payments here involved were made on special tax bills similar to those in *Standard Investment Co., supra*, they possess the same essential characteristics as some of the improvement bonds which were under consideration in *Bryant v. Commissioner* and other cases of like holding referred to above.

In its opinion in *Bryant v. Commissioner, supra*, the court, referring to tax bills or warrants, said:

The Commissioner also claims these municipal bonds are mere tax bills or warrants within Treasury Regulations 86, Art. 22 (b) (4)-1, which provides, "if such tax bills are legally collectible *only* from owners of the property benefited, [they] are not the obligations of a State, Territory, or political subdivision." Obviously the bond payable from the tax raised fund does not come within this definition of the tax bill. As we have seen, the act of 1911 itself creates a tax bill called a "warrant" which precedes the issue of the bond. It is of an entirely different character. It is issued to the contractor by the superintendent of streets and countersigned by the mayor after the city's improvement is completed. It is a mere power of attorney in the contractor or his agent to demand and receive the assessed tax from the individual property owners. The bond with its promise *by the city* to collect the taxes, hold them in the fund, and pay them on the bondholders' demand is issued after the failure of the contractor as a private person to collect the amount due through the tax bill. Whether, despite the Treasury Regulation, such tax bills are such income tax exempt obligations is a matter with which we are not here concerned.

Here, as with the bonds to which the court referred in the quotation from the *Bryant* case, the special tax bills and interest thereon were payable from special assessments levied and collected by the city as a tax and paid to the holder by the city. That the obligations were denominated tax bills instead of bonds has no bearing, of course, upon the question of the exemption of the interest from tax.

We hold upon authority of the cases discussed above that the interest payments which petitioner received on the special tax bills issued by the city of Kansas City is exempt from taxation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, LEECH, and TURNER, *JJ.*, dissent.

---

MELLOTT, *J.*, concurring: The views expressed in *Milo W. Bekins et al., Executors*, 38 B. T. A. 604, 609, *et seq.*, represent my judgment where a method of financing a local improvement by a city is followed under which the city does not pledge its credit or assume any financial

obligation. Inasmuch as three circuit courts of appeal have held to the contrary under state statutes similar to the statute under which the obligations in the instant proceeding were issued, I bow to superior authority and concur in the result reached here.

HILL and KERN, *JJ.*, concur in the above.

---

DISNEY, *J.*, dissenting: I have read the statutes of Kansas dealing with the issuance of the special tax bills involved in this proceeding. See secs. 13–1079 to 13–1087, General Statutes of Kansas, 1935. The statutes, in material part, provide that the city by ordinance levies and apportions the special assessment, and ascertains the amount against each piece of property improved under the statute; that as soon as the amount chargeable against each piece of property is ascertained by ordinance and at least 30 days before issuance and delivery of the special tax bills to the contractor, the city clerk shall notify the property owner, or his agent, by a notice stating the date when tax bills will be issued and delivered to the contractor, if the amount is not earlier paid, and such owner may, before such issuance and delivery to the contractor, redeem his property by paying to the city treasurer, "who shall receipt therefor, and all sums so paid shall be applied solely to the payment of the contractors for the work;" that if the assessment is not so paid, the city clerk certifies same annually by installments to the county clerk; that the tax bill is issued to the contractor, and if assigned to bearer, becomes a negotiable instrument; that the amount so certified to the county clerk shall be collected as other taxes by the county treasurer and paid to the city treasurer, and by him paid to the owner of the tax bill; that if any installment is unpaid after June 20 following certification to the county treasurer, the holder of the tax bill may institute an action to foreclose in any court of Kansas of competent jurisdiction and may secure judgment and a decree of sale of the property; that after the holder of the tax bill elects to bring such action, the city clerk shall not certify any further installments "and the *county treasurer* shall not accept payment of any installment theretofore certified" (italics supplied), but payments due on the tax bill on which suit has been brought may be made to the clerk of the court; that any person filing such action shall notify the city clerk and county treasurer.

In my opinion, the whole tenor of the above epitomized statutes indicates nothing more than an administrative duty upon the city. Unless prior to the issuance of the special tax bills the assessment has been paid to the city treasurer, who receipts and holds same for the contractor, the city merely certifies to the county clerk and the county treasurer, who collects. If so, he remits to the city treasurer,

who pays ,to the holder of the special tax bill. Dereliction on the part of the county treasurer in collection would involve no obligation on the city. If the amount is not voluntarily paid to the county treasurer, the holder of the special tax bill takes matters into his own hands, files foreclosure, and the matter is no longer within the control of either county treasurer or city. The county treasurer may not collect. The city clerk may not further certify to him. Only the clerk of the court may accept payment.

I think that the exemption of interest from taxation, here in question, must be limited to a financial obligation of the city. Interest entails indebtedness, in money or at least in property. Under the Kansas statute, I find none. Only after receiving the moneys from the treasurer could the city be liable, and then not upon an indebtedness, but for money had and received. It has no power to institute proceedings to collect, as seems the case under Missouri statutes. It is no party to a foreclosure by the tax bill holder. An action by the city to collect the tax bills would be clearly demurrable under the statute. If the county treasurer failed to remit the interest to the city treasurer, remitting only the principal of the installment, obviously the city could not be held for the interest. I find the instant situation different from that in *Michael Pontarelli*, 35 B. T. A. 872; affd., 97 Fed. (2d) 793, where the city's liability was limited to payment of bonds issued from the amount collected under the assessment levy and collection to be made *by the city with all reasonable diligence*; also to be distinguished from *Carey-Reed Co.*, 36 B. T. A. 36; affd., 101 Fed. (2d) 602, where, though the statute states that the city shall not be liable for failure to collect the total tax, nevertheless bonds were issued, a tax levied, payment of which was to be made to the city treasurer, the lien could be enforced by action brought in the name of the city or the contractor, the tax bills might be sold and collection enforced "in the manner provided by law for the collection of municipal taxes," and if the fund accumulated for any particular improvements is more than sufficient to pay principal and interest on the bonds, the city council might reduce the property owners' assessments, and if there was a deficit "the council may provide for payment of same out of the general fund"; and the city could, in anticipation of collection of the taxes, issue bonds and pledge such taxes and the liens on the property.

Unable to discover, under the Kansas law, liability of the city for the interest, or any inherently municipal connection with it, I do not believe that exemption of such interest is reasonably within the intendment of the Federal statute providing exemption. I therefore respectfully dissent.

VAN FOSSAN, *J.*, agrees this with dissent.