INDEPENDENT GRAVEL COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4988–69. Filed June 30, 1971.

*Lloyd E. Roberts,* for the petitioner.
*Larry K. Hercules,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioner's Federal income tax for the year 1962 in the amount of $9,256.55.

Concessions having been made, the only issue remaining for decision is whether interest received on special tax bills of the City of Joplin, Mo., is excludable from gross income under section 103 of the Internal Revenue Code of 1964.[1]

### FINDINGS OF FACT

All facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference, and those facts necessary to an understanding of the case are set out below.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

Petitioner (hereinafter sometimes referred to as Gravel), is a Missouri corporation, with its principal office located in Joplin, Mo., at the time it filed its petition in this proceeding. Its corporate income tax return for the year in issue was filed with the district director of internal revenue for the district of Missouri.

Gravel was principally engaged in the business of paving streets and installing sewer systems for the City of Joplin, Mo. Joplin usually issued special tax bills (hereinafter sometime referred to as bills) in payment for work performed by Gravel. A typical special tax bill issued by the City is set out in the margin.[2] Such bills, by virtue of article XI of the City Charter of the City of Joplin, became liens against the individual properties benefited from the work performed by Gravel. If they were not paid by the appropriate property owners, Gravel would have incurred the expense of instituting a suit for collection which could be brought in the name of the City as

---

[2]
### SPECIAL TAX BILL
#### (Payable in Installments)

No. _____

IT IS HEREBY CERTIFIED, That pursuant to the provisions of the Home Rule Charter of the City of Joplin, and the ordinances of said City, the following described real estate:
_____
has been improved in accordance with and as authorized by Ordinance No. _____ as follows: _____
and has been assessed and charged with the sum of $_____ as a Special Tax, said sum having been duly levied, assessed and apportioned against the aforesaid real estate in the manner provided by the Home Rule Charter of Joplin and is the amount chargeable against said land as provided by law for its proportion of the cost of said work.

This Special Tax Bill is issued to _____ in compliance with his contract with the said City of Joplin for doing the work and furnishing the materials for said improvement and for full payment of the same.

This Special Tax Bill Bears interest at the rate of _____ per cent per annum from date and is a special lien against the land above described; it is made payable __._____ together with the then accrued interest. The owner of the property charged with the payment of this Tax Bill or the owner of any interest therein, shall have the privilege of paying the same in full at any time before the expiration of thirty (30) days from the date hereof. This Tax Bill, including each installment thereon, if not paid in full before the expiration of thirty days from the date hereof shall bear interest from this date at the rate above set forth and when any installment comes due and collectible as herein provided, interest thereon and all unpaid installments shall be due and collectible to that date. If any installment of this Tax Bill be not paid when due, then all the unpaid installments shall immediately become due and collectible, together with the interest rate of _____ per cent per annum from the date to which interest has been paid on said installments, or if no installment has been paid, then from the date of this Tax Bill. The Lien hereof shall continue for a period of six (6) years from the date of this Tax Bill unless sooner paid or in the event suit is brought to enforce such lien, then until the expiration of such litigation.

Certified in the name of the Director of Public Works by the undersigned Director and recorded on the records of the Public Works Department this _____ day of _____, 19__.

_____
*Director of Public Works.*

Countersigned: _____._
*Director of Finance*
By _____

well as its own name. However, as a matter of practice the City would not have offered any assistance in the suit.

Article XI of the City Charter of the City of Joplin provided the following with respect to the procedures involved in making public improvements and payments therefor by means of special tax bills:

Section 11.01. CITY'S POWERS IN MAKING PUBLIC IMPROVEMENTS. The city shall have power to improve the public highways of every character, and parts thereof, within the city * * * and to acquire, construct, reconstruct, repair, maintain, enlarge, alter and extend sewers, drains, canals, septic tanks, sewage disposal works and plants, * * * and to pay for such public improvements, or any of them, in whole or in part, * * * special tax bills or securities evidencing special assessments, and to make, levy, assess and collect special assessments to pay therefor, in the manner provided herein, and to issue special tax bills and other evidences of such assessments. * * *

Section 11.02. ORDINANCE SHALL PRESCRIBE METHOD OF PAYING FOR PUBLIC IMPROVEMENTS. All ordinances and contracts for work authorized to be done by this article shall specify how the same is to be paid for, and in case payment is to be made in whole or in part to the contractor in special tax bills or other evidences of special assessments, the city shall in no event, nor in any manner, be liable for or on account of the work so to be paid for.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Section 11.04 INSTITUTION OF PROCEEDINGS BY RESOLUTION—ESTIMATE. All proceedings to make any of the public improvements authorized herein shall (unless otherwise expressly provided in this charter) be begun by the adoption and entry of a declaration of necessity (hereinafter referred to as the resolution) by the director of public works. Such resolution shall be entered on the records of the department, and shall state the nature of the improvement, and when the same is to be paid for in special tax bills or other evidences of assessments upon real property (or out of the revolving public improvement fund, to be reimbursed by collection of such assessments), it shall state the method of making assessments to pay therefor. The director shall also have prepared by the city engineer, prior to the introduction and adoption of said resolution, an estimate of the probable cost of such proposed improvement. Such estimate shall be open to inspection and discussion at any hearing held as to such improvement. * * *

Section 11.05 HEARING SET—PUBLICATION OF NOTICE. At or after the adoption and entry of record of any such resolution, the director of public works shall, by order, fix a day upon which a hearing in respect to such improvement shall be had, which day shall be within thirty days after the date when such order is made. * * *

*Posting of Notice.* He shall also cause a notice of such proposed improvement to be posted in at least five public places along the street or other public property to be improved, or, in case of a district sewer, within such district, or in case of a joint district sewer, in at least ten public places within such joint sewer district. * * *

Section 11.06. HEARING—DECISION OF DIRECTOR. On the date fixed for such hearing any and all property owners interested in such improvement may, by written petition, or otherwise, present their views in respect to the proposed improvement to the said director, and the said director may adjourn the hearing from time to time. After such hearing, if the said director shall determine that it is not for the public interest that the proposed improvement, or a part thereof,

be made, and paid for either out of the general fund or by any method of assessment, or otherwise, he shall make an order to that effect, and thereupon the proceedings for the improvement, or part thereof, determined against by such order, shall stop and shall not be begun again until the adoption of a new resolution.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Section 11.09. PLANS AND SPECIFICATIONS. After such hearing, if no such determination against the improvement is made, or if only a part of the proposed improvement be determined against by said director, he shall perfect and adopt plans and specifications for the proposed improvement not determined against, including, as he may deem proper, provisions for the maintenance thereof for a stated period.

Section 11.12. BIDS, CONTRACTS—CONFIRMATION BY COUNCIL. After the entry of such resolution and the adoption of such plans and specifications, the director of public works shall advertise for bids for the doing of the work * * *. Except for such right of rejection the director of public works shall let the contract to the lowest and best bidder therefor, and shall cause the contract so let to be formally executed by the contractor and by said director on behalf of the city. Such contract, before it shall be binding and effective, shall be confirmed by an ordinance of the said council, as hereinafter specified, and when so confirmed shall in all respects be considered and held to have been authorized by the city.

Section 11.13. PAYMENTS TO CONTRACTOR — HOW MADE — CASH OR TAX BILLS. All bids for the doing of public work to be paid for out of the proceeds of special assessments shall, except as herein provided, be upon the basis of being paid for by special tax bills evidencing such asessments. * * *

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Section 11.16. METHOD OF PAYMENT TO BE PRESCRIBED BY ORDINANCE. The ordinance confirming the contract shall also provide for and authorize the improvement and shall state the nature of the improvement, and this may be done by a reference to the plans and specifications therefor. Such ordinance shall state how the cost thereof shall be paid; that is, whether the cost thereof is to be paid by special assessments, or by special tax bills or other evidences of such assessments, or out of the general fund, or out of the revolving public improvement fund, or other funds, or whether by one method or the other, in whole or in part, and if in whole or in part by special assessments or special tax bills or other evidences of special assessments, how assessments shall be made and levied. The said director of public works shall endorse his approval on the ordinance.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Section 11.31. ACCEPTANCE OF WORK WHEN COMPLETED. The director of public works is vested with power to determine whether any improvement constructed under a contract with the city has been completed in accordance with the terms of the contract therefor, and to accept such improvement on the part of the city, and to determine the amount of the liquidated damages, if any, to be paid by the contractor in accordance with the terms of the contract therefor, for failure to comply with the contract; and in all cases the director of public works is invested with power to ascertain in accordance with the provisions of this charter, the amount that each tract of land shall be assessed or charged for the payment of the cost of such work.

Section 11.32. ASSESSMENTS TO COVER AMOUNT DUE CONTRACTOR — TAX BILLS TO ISSUE. The director of public works shall, at the time of accepting any improvement on the part of the city, make an order or orders accepting same and determine the amount to be paid to the contractor. The director of public works

shall thereupon also enter on the records of his department an order or orders making and levying an assessment against the tracts of land, exclusive of improvements, to be assessed to pay therefor, in the manner provided for in the ordinance, and in accordance with the charter, the aggregate of which assessments shall equal the cost of such work or portion thereof to be paid by special assessments or in special tax bills. He shall thereupon issue and deliver to the contractor, or to his assignee (or in cases where the city shall pay him in cash, and carry such assessments itself, as provided in this article, then to the city direct) special tax bills to be dated the day when such tax bills and apportionment are certified to the director of finance (as provided in Section 11.50 of this article), in payment of the cost of such improvements which is to be paid for by special tax bills, or by such special assessments.

All computations, apportionments and assessments required by this article to be made by the director of public works shall be held to be properly made when the same are approved by said director.

Section 11.33. TAX BILLS TO BE CERTIFIED AND DELIVERED. All special tax bills provided for by this charter, except when issued to the city, in cases provided for in this article, shall be made out in favor of the contractor to be paid, or his assignee, and all such special tax bills shall be certified by the director of public works, or in his name by any person or persons by the said director thereto authorized by order on the record of his department, and shall be countersigned by the director of finance or in his name by a duly authorized person in his department. Said director shall deliver such tax bills to the party in whose favor made out, or his assignee, and take the receipt of such party therefor in full of all claims against the city on account of the work for which such tax bills shall have been made out.

Such tax bills shall be issued within twenty days from the completion and acceptance of the work, but the failure to issue them within such time shall not affect the validity of the tax bills.

No tax bill need give the name of any party owning or interested in the land charged thereby.

Section 11.34. No LIABILITY UPON CITY FOR TAX BILLS. When any work is done, improvement made or land purchased, and payment therefor is to be made in special tax bills, or in special assessments, as provided in this charter, the city shall, in no event, or in any manner whatever, be liable for or on account of such work done or improvement made or land purchased, or liable in any manner for the payment of the same, by reason of any invalidity or error in any such tax bill or special assessment.

\*       \*       \*       \*       \*       \*       \*

Section 11.50. CERTIFICATION OF TAX BILLS TO DIRECTOR OF FINANCE. As soon as the cost of any work, payable in special tax bills as in this article provided, has been assessed against the several tracts of land chargeable therewith, the director of public works shall, at the time of delivering the tax bills to the contractor, or his assignee, or to the director of finance on behalf of the city, when entitled thereto, certify such assessment and apportionment to the director of finance. Such apportionment shall contain the names of the owners and parties interested in the several tracts of land affected and charged therewith, who were such at the date when the work was accepted on behalf of the city, such names to be determined and taken from the assessment books used for the assessment and levy of general taxes by the city, but no defect or mistake in said books, or in the description therein of the parcels of land, or in the names in such apportionment, shall impair or affect the validity of the tax bills. The

director of finance shall immediately upon the receipt of such apportionment enter the assessments therein contained in appropriate books to be kept for that purpose to be called "Special Tax Record," showing the property assessed, the title and date of approval of the ordinance providing for the improvement for which such tax bills are issued, the amount and date of the assessment and the rate of interest thereon, and deliver same to the city treasurer.

Section 11.51. NOTICE BY TREASURER. Immediately upon receipt of such apportionment, the city treasurer shall give notice, by mail or otherwise, as may be provided by ordinance, to the parties named in such apportionment, of the issuance of the special tax bills against the tracts of land in which they appear to be respectively interested as appears by such apportionment, describing such tracts of land and stating in general terms for what purpose such tax bills were issued, the amount, rate of interest, and when and where payable.

Section 11.52. PAYMENT OF TAX BILLS—PROCEDURE—HOLDER OF TAX BILL TO RECEIVE PROCEEDS, HOW. Any person owning or interested in any tract of land against which a special tax bill may be issued under the provisions of this charter, may pay the same to the city treasurer, whose duty it shall be to receive the amount thereof, without charge of commission, and to issue to such person duplicate receipts therefor, showing from whom received, the date and the amount of such tax bill, with a description of the land as described in such bill. The original of such receipt shall be delivered to the person entitled thereto; the duplicate thereof shall be filed with the director of finance, who shall keep same in his office, where it shall be available for inspection. The city treasurer shall cancel and mark "paid" the amount of such tax bill so paid on the record thereof, and such entry shall be evidence of the payment as stated, and said tract of land shall be discharged from all liens on account of such tax bill so paid from that date. The person to whom any such tax bill may be issued, or the assignee thereof, shall be entitled to receive, on demand, the money so paid to the city treasurer only on delivery of such special tax bill, duly receipted in full, to the director of finance, who shall file the same in his office and draw a warrant upon the city in favor of the party so entitled to receive the same, for the amount so paid to the city on account of such special tax bill.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Section 11.54. TREASURER'S DUTIES AND LIABILITY AS TO TAX BILLS. The special tax record to be kept by the treasurer shall be complete and full and show all special tax bills, if any, issued under this charter, and all benefit assessments arising out of condemnation and grading cases made under the provisions of this article which may be in his hands for collection against any lot, tract or parcel of land in the City of Joplin. Any and all special assessments therein contained, whether arising out of the issuance of special tax bills, as in this article provided, or by virtue of the verdict or report of juries or commissioners in such condemnation or grading proceedings, respectively, shall be considered for the purpose of collecting and receiving payment therefor, as special taxes against any lot, tract or parcel of land against which the same may be a lien.

Upon application to the city treasurer for the amount of general city taxes against any lot, tract or parcel of land in the city of Joplin, said treasurer shall also furnish to the party making such application a list of all special tax bills and of all such benefit assessments against such lot, tract or parcel of land as appear by said record at that time.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Section 11.57. TAX BILLS MAY BE PAID DIRECT TO HOLDERS THEREOF—EFFECT. Every special tax bill may be paid to the owner or holder thereof, and upon pres-

entation of such tax bill marked "paid" to the city treasurer, he shall cancel and mark "paid" the amount of such tax bill on the record thereof. Such entry, when made, shall have the same effect to discharge the tract of land affected by such tax bill from the lien thereof as if the amount of such tax bill had been paid to the city treasurer as in this article provided, and such entry shall be evidence of the payment of the tax bill as therein stated.

Section 11.58. LIEN OF ASSESSMENTS—SUIT TO BE BROUGHT WITHIN TWO YEARS. Every special tax bill issued under the provisions of this article shall be a lien upon the land described therein upon the date of the certification thereof to the director of finance as in this article provided, and such lien shall continue for 2 years thereafter, but no longer (except as in this article otherwise provided) unless suit shall be brought to collect the same within two years from the date of said certification. In such case the lien shall continue until the determination of the legal proceedings to collect the same, including any sale of the property charged. Every such tax bill and lien thereof shall be assignable, and the assignee thereof may sue in his own name.

Section 11.59. NOTICE OF SUIT ON TAX BILLS TO BE FILED WITH CITY. If suit on any special tax bill shall be brought within two years, the plaintiff or plaintiffs therein shall before the bringing of each suit, in person or by attorney or agent, file in the office of the city treasurer a written statement giving a brief description of the tax bill to be sued on, and in what court and against whom such suit is to be brought. The city treasurer shall immediately after the filing of any statement, note on the record of such tax bill the time of filing such statement and the substance of the same. If the plaintiff or plaintiffs in such suit shall fail to file such statement within the time above limited, the land described in the tax bill sued on shall be free from the lien of the tax bill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment.

Section 11.60. PARTIES TO SUITS ON TAX BILLS. All or any of the owners of the land charged, or of any interest or estate therein, may be made defendants in any suit upon a tax bill, and the right, title, interest or estate of the parties made defendants in any such suit shall be bound thereby; and the owners of the land as shown by the records in the office of the recorder of deeds of Jasper or Newton County, Missouri, and by the records of the courts of record having jurisdiction in the city of Joplin shall be conclusively held to be the owners thereof for the purpose of foreclosing such liens; and all suits on special tax bills may be brought in the names of the owners or assignees thereof. Before suit, the owner of any part in severalty or of any undivided interest in the land charged by any tax bill may pay his share separately, in which case his part or interest shall not be liable in case of suit.

Special tax bills, whether issued pursuant to one or more contracts or against one or more parcels of land owned by the same party or parties made defendant, may be joined in one suit, but a separate judgment on each tax bill shall be rendered and execution shall be issued accordingly.

\* \* \* \* \* \* \*

Section 11.71. ASSESSMENTS MAY BE PAYABLE IN NOT MORE THAN TEN INSTALL-MENTS. The council may, by ordinance, provide that the special assessments to be levied or special tax bills to be issued in payment for improvements mentioned in this article shall be made payable in not more than ten equal installments, and such tax bills when issued shall be payable and collectible as follows: The first installment shall become due and collectible on the first anniversary of the date of certification to the director of finance of the tax bills; and each succeeding installment shall become due on the anniversary of each year thereafter.

In 1965 petitioner received $18,065.33 in interest directly from property owners whose property had been assessed for public improvements completed by petitioner. In preparing its income tax return for 1965, petitioner did not include this amount in its gross income, but reported it as nontaxable interest received on municipal obligations. Respondent determined the amount to be includable in gross income in 1965 with the result that a net operating loss in that year was eradicated and a $17,801.09 carryback loss to 1962 disallowed.

## OPINION

Petitioner received interest on special tax bills issued by the City of Joplin, Mo. It contends that this interest is tax exempt under section 103 [3] as interest received upon governmental obligations. Respondent, on the other hand, argues that the special tax bills were not obligations of a political subdivision pursuant to section 1.103-1, Income Tax Regs.[4] He contends that the bills were in effect obligations of the private landowners, since the City was not required to enforce collection and was not liable for payment of the bills in case of default.

The issue presented is not one of first impression. We have on many occasions in the past dealt with the exemption of interest paid on instruments issued by a governmental unit in consideration for municipal improvements. *Michael Pontarelli*, 35 B.T.A. 872 (1937), affd. 97 F.2d 793 (C.A. 7, 1938); *Carey-Reed Co.*, 36 B.T.A. 36 (1937), affd. 101 F.2d 602 (C.A. 6, 1939); *Standard Investment Co*, 36 B.T.A. 156 (1937); *T. I. Stoner*, 37 B.T.A. 249 (1938); *Milo W. Bekins Et Al, Executors*, 38 B.T.A. 604 (1938); *Susanna Bixby Bryant*, 38 B.T.A. 618 (1938), revd. 111 F.2d 9 (C.A. 9, 1940); *District Bond Co.*, 39 B.T.A. 739 (1939), revd. 113 F.2d 347 (C.A. 9, 1940); *Riverview State Bank*, 1 T.C. 1147 (1943); cf. *Estate of Caroline White*, 3 T.C. 156 (1944), affd. 144 F.2d 1019 (C.A. 2, 1944), certiorari denied 323 U.S. 792 (1945). Petitioner relies on one of these cases, *Riverview State Bank, supra*, to support his contentions.

[3] SEC. 103. INTEREST ON CERTAIN GOVERNMENTAL OBLIGATIONS.
    (a) GENERAL RULE.—Gross income does not include interest on—
        (1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia;
    [4] Sec. 1.103-1. Interest upon obligations of a State, Territory, etc.
    Interest upon the obligations of a State, Territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia is not includible in gross income. Obligations issued by or on behalf of the State, Territory, or possession of the United States, or a duly organized political subdivision acting by constituted authorities empowered to issue such obligations, are the obligations of a State, Territory, or possession of the United States, or a political subdivision thereof. Certificates issued by a political subdivision for public improvements (such as sewers, sidewalks, streets, etc.) which are evidence of special assessments against specific property, which assessments become a lien against such property and which the political subdivision is required to enforce, are, for purposes of this section, obligations of the political subdivision even though the obligations are to be satisfied out of special funds and not out of general funds or taxes. * * *

Respondent does not ask us to overrule *Riverview State Bank, supra*. Rather he continues to accept our decision in that case (see also Rev. Rul. 56–159, 1956–1 C.B. 609) and seeks to distinguish it on the basis of two other decisions, *Standard Investment Co., supra*, and *T. I. Stoner, supra*.

In *Riverview State Bank*, special tax bills were issued by Kansas City, Kans., to pay contractors for street improvements. Under Kansas statutes a special tax bill became a lien upon the improved property therein described, superior to all other liens, excepting the liens for general taxes. The mechanisms for issuance and collection on the special tax bills were as follows (1 T.C. at 1151) :

The statutes, in material part, provide that the city by ordinance levies and apportions the special assessment, and ascertains the amount against each piece of property improved under the statute; that as soon as the amount chargeable against each piece of property is ascertained by ordinance and at least 30 days before issuance and delivery of the special tax bills to the contractor, the city clerk shall notify the property owner, or his agent, by a notice stating the date when tax bills will be issued and delivered to the contractor, if the amount is not earlier paid, and such owner may, before such issuance and delivery to the contractor, redeem his property by paying to the city treasurer, "who shall receipt therefor, and all sums so paid shall be applied solely to the payment of the contractors for the work;" that if the assessment is not so paid, the city clerk certifies same annually by installments to the county clerk; that the tax bill is issued to the contractor, and if assigned to bearer, becomes a negotiable instrument; that the amount so certified to the county clerk shall be collected as other taxes by the county treasurer and paid to the city treasurer, and by him paid to the owner of the tax bill; that if any installment is unpaid after June 20 following certification to the county treasurer, the holder of the tax bill may institute an action to foreclose in any court of Kansas of competent jurisdiction and may secure judgment and a decree of sale of the property; that after the holder of the tax bill elects to bring such action, the city clerk shall not certify any further installments "and the *county treasurer* shall not accept payment of any installment theretofore certified" (italics supplied), but payments due on the tax bill on which suit has been brought may be made to the clerk of the court; that any person filing such action shall notify the city clerk and county treasurer.

Certain pertinent statutory authority also stated (1 T.C. at 1148) :

* * * no liability of whatever character on account of said tax bills shall attach to or be a claim against the city therefor, except that it shall be the duty of the governing body of the city to levy by ordinance the total amount of said tax bills against the property charged therewith, and cause each installment of such tax bills in its order, with interest on the unpaid portion thereof to August 1 of the following year, to be duly certified by the city clerk to the county clerk, to be placed on the tax roll for collection as other taxes for the benefit of the legal holder of such special tax bills as hereinafter provided for. * * *

This Court held that interest on such special tax bills was tax exempt. In so doing it overruled the Board's prior decision in *Susanna Bixby Bryant, supra, District Bond Co., supra*, and, in effect, over-

ruled *T. I. Stoner, supra,* and *Standard Investment Co., supra.* These cases held that interest received on instruments similar to those in the *Riverview State Bank* case was nonexempt. The reasoning of the earlier cases was that the obligations were those of the landowners and not of the governmental units since the obligations were payable exclusively out of the funds received from assessments on the benefited property; the governmental units were not liable otherwise than to the extent of the funds; and enforcement of liens on the owners' properties was the only recourse in case of nonpayment. The Ninth Circuit, in *Bryant* v. *Commissioner,* 111 F. 2d 9, 15, 17 (C.A. 9, 1940), however, stated with respect to the reasoning:

What moves the contractor to construct the municipal improvement is the anticipated performance of the city's obligation to collect the tax, place it in the fund in the city treasury, hold it there and pay it over on the demand of the bondholder.

The statute of 1911 requires the municipality to service the bond obligation of principal and interest by the exercise of the governmental power of collecting the tax from the owner of the liened property. The statute requires the city treasurer as tax collector to send his notices of the amount due and to be collected 15 days before the date of the semi-annual interest payment date.[20] Upon collecting it he places it in a special fund in the city treasury for each bond issued [21] from which he must pay it on the bondholder's demand.

If the municipality fail to collect the tax and default in payment of its bond, the bondholder either may compel it to collect the tax and deposit it in the fund by the exercise of its governmental function of a tax sale,[22] or he may foreclose in a court proceeding.[23]

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The Commissioner's contention, in effect, is that the bond is entirely an obligation of the owner of the land upon which the tax assessment is laid in invitum.

His argument is based on an interpretation of the provision of the bond that since the municipality is not to be holden for payment of principal or interest "otherwise" than from its tax moneys in the fund, it is not holden to pay them to the bondholder at all. We see no merit in this contention. It ignores the fact that no contractor would make the same bid for the construction of the public improvement, if all he were to receive is the right to foreclose or have a tax sale of individual pieces of property, securing each of a bundle of bonds paying him small amounts. &ast; &ast; &ast;

The commissioner thus ignores the fact that the *municipality* by issuing the bond with its accompanying statutory obligations, in effect, promises, first, to exercise its governmental power of tax collection for the fund and, second, to pay the bondholder from the fund which makes possible the particular contract for the municipality's public improvement &ast; &ast; &ast; no such taxing power exists in the municipality unless for a "public" benefit for the city as a whole as well as a "private" benefit to land holders in the improvement of the city's streets.

[Footnotes omitted.]

We accepted the above reasoning in *Riverview.*

The factual distinctions between *Riverview* and the instant case are minimal other than for one, upon which the respondent relies quite

heavily as being of decisive importance. Under article XI, section 11.52 of the Joplin Charter, any person owing the special tax bill *may* pay the bill to the city treasurer, who has the duty to accept the same and cancel the tax bill, thus discharging the liens on the property. Thereafter, upon demand, the contractor is entitled to the sum. Alternatively, under article XI, section 11.57, the property owner *may* pay directly the owner of the special tax bill and then may present the bill, marked paid by owner, to the treasurer who thereafter shall enter the bill as paid.

According to respondent, since the City cannot be forced to collect the funds and since the landowner could pay the sums directly to the contractor, the obligation is not that of the City. In *Riverview State Bank* and other cases the political subdivision was the only entity that could collect the funds [5] and, according to respondent, this difference is of decisive importance. Furthermore, he argues that since the City does not "enforce" the obligation the special tax bill cannot qualify as a governmental obligation under section 1.103–1, Income Tax Regs. With regard to the latter argument, it should be noted that the regulation is not exclusive but merely describes one situation involving tax-exempt interest. Hence, there is no authority for precluding such treatment in the instant case. The petitioner, in fact, does not rely on the regulations but rather, as noted above, on our prior decisions to uphold his contention and we think his reliance well founded.

In the instant case, Joplin obtained the construction of public improvements (presumably of benefit to the entire city), under agreements that the contractors would realize their contract payment at a future period of time from a specific and special source of revenue available to the subdivision, as opposed to payment from the general funds. Such an arrangement does not preclude application of section 103. *Riverview State Bank, supra; Michael Pontarelli, supra; Carey-Reed Co., supra; Bryant* v. *Commissioner, supra.* One possible point of distinction between the instant case and the above-cited cases, as noted by respondent, is that Joplin short-circuited payment procedures by allowing direct receipt of the funds by the contractor, rather than requiring absolutely that payments first go to the political subdivision for subsequent disbursement to the taxpayer. We find this to be a distinction without a difference, for in any event it is the subdivision's improvements and its revenue which paid for them. See *In Re*

---

[5] We are uncertain whether there was an alternative mode of payment in these cases. The facts presented therein are unclear in this respect. Moreover, respondent argued but did not cite authority for the proposition that Gravel could not compel the City to make collection. We think it clear that the City at least has a duty to accept payment if offered by the owner, and that that is enough.

*General Indicator Corp.*, an unreported case (E.D. Wis. 1969, 23 A.F.T.R. 2d 69–1418, 69–2 U.S.T.C. par. 9484).

Realistically, Joplin was exercising its borrowing power rather than the landowner. The assessed property owners took no part in the contract negotiations or in determining how the contracts would be financed.[6] The City sought the construction of the public improvements, dealt with petitioner, had the sole power to accept or reject the completed job, and obtained petitioner's agreement to accept a deferred receipt for the contract price. The City made use of an exclusive right, the right to levy special assessments against its inhabitants, which it pledged in eliciting that agreement from the petitioner and it was this pledge[7] upon which the petitioner relied in contracting to make the improvements, not any undertaking by, or credit of, the landowner. Under these circumstances, it was, in every realistic sense, the borrowing power of the City and the obligation of the City that were involved. The fact that the payment from the source need not be first paid to the City and then forwarded is irrelevant. The funds received by petitioner were, nevertheless, those from special revenues of the City which the City has allowed to be paid directly to the contractor rather than through a circuitous route. Moreover, even if the petitioner was unable to force Joplin to collect the tax bills, whereas the taxpayer in *Bryant* had such a right, this factor is not controlling. The right to compel the City to enforce collection is merely a right to compel the City to be the conduit for funds since, in any event, the City is not liable if the funds cannot be collected. As we indicated above, the route through which the funds flow is not determinative under the circumstances here. We hold that the substance of this situation falls within our decision in *Riverview State Bank, supra*, and, accordingly, the interest is exempt income under section 103.

*Decision will be entered for the petitioner.*

---

[6] There are procedures for the landowner to prevent improvements that are not in the "public interest," sec. 11.07 of the City charter, and he does have the right to delay proceedings by remonstrance in cases involving "nonbusiness" streets.

[7] We note that the City's pledge (contract) was required to be confirmed by an ordinance of the city council under sec. 11.12 of the charter, *supra.*