T.C. Memo. 1998-329


UNITED STATES TAX COURT


JOHN R. HERNANDEZ, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 17244-96.                Filed September 21, 1998.


        The Court granted P's Motion for Reconsideration
of <u>Hernandez v. Commissioner</u>, T.C. Memo. 1998-46, which
held that interest received on redemption of tax
certificates sold at public auction by Pasco County,
Florida, for nonpayment of property taxes was not
excluded from P's gross income under I.R.C. sec. 103(a)
as interest earned on State or local obligations.  The
ground of decision was that tax certificates are not
issued by a State or political subdivision in exercise
of its sovereign borrowing power and therefore are not
obligations of a State or political subdivision for
purposes of I.R.C. sec. 103.

        On reconsideration, P asserts that the portion of
the interest paid on redemption of tax certificates
that is attributable to special assessments (in
contrast to ad valorem taxes) is excluded from his

gross income under sec. 1.103-1(b), Income Tax Regs., which states:  "Certificates issued by a political subdivision for public improvements * * * which are evidence of special assessments * * * and which the political subdivision is required to enforce, are, for purposes of this section, obligations of the political subdivision".

<u>Held</u>:  The language at issue in sec. 1.103-1(b), Income Tax Regs., is restricted to special assessment obligations that are issued by a State or political subdivision in exercise of its sovereign borrowing power to finance public improvements.  The tax certificates in this case are issued by a State or political subdivision as a means of collecting delinquent taxes in the exercise and enforcement of its taxing power, not as a means of raising capital to finance public improvements.  Accordingly, sec. 1.103-1(b), Income Tax Regs., does not apply.

John R. Hernandez, pro se.

<u>Charles Baer</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  This matter is before us on petitioner's motion under Rule 161[1] for reconsideration of our opinion in <u>Hernandez v. Commissioner</u>, T.C. Memo. 1998-46 (Hernandez I). Hernandez I held that tax certificates sold by the Pasco County,

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Florida, tax collector for delinquent taxes owed on real property are not obligations of a State or political subdivision, so that interest paid on the certificates is not excluded from gross income under section 103 for the taxable years 1990, 1991, and 1992. On May 28, 1998, we granted petitioner's motion for reconsideration.

Introduction

On reconsideration, petitioner contends:[2] (1) That tax certificates issued by the Pasco County, Florida, tax collector include both ad valorem real property taxes and special assessments; (2) that section 1.103-1, Income Tax Regs., clearly provides that certificates issued to enforce special assessments against specific property, are, for the purposes of section 103, obligations of the political subdivision; and (3) respondent's computation under Rule 155 has failed to deduct interest relating to special assessments, from the composite interest payments, which include interest on both special assessments and ad valorem taxes, derived by the county as a single computation on the gross charge against each parcel of land for which a tax certificate was issued.

In his new arguments, petitioner relies on the following language of section 1.103-1(b), Income Tax Regs.:

---

[2] Petitioner makes other claims that lack even facial merit and do not warrant reconsideration. Accordingly, they are denied.

Certificates issued by a political subdivision for public improvements (such as sewers, sidewalks, streets, etc.) which are evidence of special assessments against specific property, which assessments become a lien against such property and which the political subdivision is required to enforce, are, for purposes of this section, obligations of the political subdivision even though the obligations are to be satisfied out of special funds and not out of general funds or taxes.  * * *

We have considered petitioner's new arguments and find them to be without merit.  We remain convinced that our prior findings and opinion in Hernandez I are correct; we decline to alter them in any respect.

I.    Taxation of Real Property in the State of Florida

A brief preliminary discussion of the Florida local property tax system may be helpful.  Taxes are generally imposed on real property in the form of ad valorem property taxes or special assessments.  Ad valorem taxes are levied uniformly throughout a taxing district for the general benefit of residents and property.  Sarasota County v. Sarasota Church of Christ, Inc., 667 So. 2d 180, 183 (Fla. 1995); City of Boca Raton v. State, 595 So. 2d 25, 29 (Fla. 1992).  In contrast, special assessments are usually imposed for a specific purpose to benefit a specific area or class of property and are imposed only on those properties that will derive a benefit from the services or improvements made possible by the special assessment.  Sarasota County v. Sarasota Church of Christ, Inc., supra at 183; City of Boca Raton v. State, supra at 29.

Although Florida ad valorem taxes and special assessments are conceptually distinct, the Florida legislature contemplates their joint collection.[3]  Florida statutory law, which governs the collection of ad valorem taxes and the sale of tax certificates, provides that special assessments may be collected in the same manner as ad valorem property taxes.  Fla. Stat. Ann. sec. 197.363 (West 1989 & Supp. 1998).  In order to be validly collected in the same manner as ad valorem property taxes, special assessments must be subjected to all collection provisions of chapter 197, including, among others, the issuance of tax certificates and tax deeds for nonpayment.  Consequently, an unpaid tax bill subject to sale of a tax certificate may include both ad valorem taxes and special assessments.

II.  Tax Certificates Not Issued by Florida or Political
     Subdivision in the Exercise of Sovereign Borrowing Power

In Hernandez I, we held that interest earned on a Florida tax certificate is not excluded from petitioner's gross income under section 103.  We held that a Florida tax certificate is not an obligation of the State of Florida or a political subdivision for purposes of section 103(c), because it is not issued by a municipality as an exercise of its sovereign borrowing power.  Whether the interest earned on a Florida tax

---

[3]  See City of Boca Raton v. State, 595 So. 2d 25, 29 (Fla. 1992) (a legally imposed special assessment is not a tax and may be imposed by a municipality without violating the Florida Constitution's reservation of all taxation powers, other than ad valorem taxes, to the State).

certificate is attributable to ad valorem property taxes or special assessments has no bearing.  Our holding was based upon an analysis of the nature and substance of the tax certificate itself.  Thus, the fact that part of the interest earned on petitioner's tax certificates may be attributable to special assessments would not alter our decision.

The sale of Florida tax certificates is properly characterized not as an exercise of municipal borrowing power, but as an exercise of municipal taxing power.  In contrast to a bond offering, or the issuance of special assessment obligations[4] to contractors to finance municipal improvements, the sale of tax certificates is not an activity designed to raise new capital.  Instead, the sale of tax certificates is an effort to collect outstanding taxes, which are part of the municipality's existing capital.[5]  See Consolidated Edison Co. v. United States, 10 F.3d 68, 72 (2d Cir. 1993) ("we think it clear that the City [New York] was not exercising its borrowing power in accepting Con

---

[4] In this opinion, the terms "special assessment obligations" and "special assessment indebtedness" are used interchangeably to refer generally to nonrecourse securities issued by a municipality to finance public improvements, with the obligation for repayment limited to funds available from special assessments on the properties benefited by the improvements.

[5] See Barrow v. Commissioner, T.C. Memo. 1983-123, in which "We cited Florida court opinions that characterize tax certificates as nothing more than evidence of a lien created solely to facilitate expedient enforcement of the obligation of a landowner to pay taxes lawfully assessed."  Hernandez v. Commissioner, T.C. Memo. 1998-46 (citing Beebe v. State Supreme Court, 151, So. 298, 299 (Fla. 1933)).

Edison's tax prepayments, but instead was exercising its power to tax").

As discussed in Hernandez I, Florida tax certificates are sold at auction to the bidder who will pay the outstanding taxes, interest, costs, and other charges and is willing to accept the lowest rate of interest.  The issuer, Pasco County in the case at hand, has no stake in the outcome of such an auction, other than seeing to it that all tax certificates are sold, as in every case in which a certificate is sold the issuer will receive payment in full up front at the time of sale.  The auction process determines the rate of interest to be paid by the delinquent property owner to redeem the certificate.  The system so described above is consistent with our characterization of the sale of a Florida tax certificate as a collection activity in exercise of the issuer's sovereign taxing power.

As pointed out in Hernandez I, the requirement that an obligation be issued in exercise of sovereign borrowing power in order to qualify as a section 103(c)(1) obligation "derives from the notion that the purpose of the section 103 exclusion is to enable States and localities to obtain capital at lower than market rates of interest".  In the municipal bond market, "the exclusion causes purchasers of tax-exempt bonds to accept interest at lower rates equal to the lower after-tax rates of interest earned by holders of taxable bonds of equivalent risk." Hernandez v. Commissioner, T.C. Memo. 1998-46.  But the market

for Florida tax certificates does not serve the purposes of section 103, inasmuch as that market is not a source of borrowing for municipalities, which bear no interest costs in the issuance of tax certificates.  Interest on tax certificates is paid only by the delinquent property owner upon redemption of the certificate; the municipality incurs no obligation to pay any amount to the holder of tax certificates.  In selling a tax certificate, the municipality always receives up front the full amount of outstanding taxes, interest, costs, and other charges on the respective property.

III. <u>Section 1.103-1(b), Income Tax Regs., and Its Predecessors</u>

Commencing with the first Federal income tax statute following the 16th Amendment to the Constitution, the regulations under the statutory predecessors of section 103 had a tortuous history, as numerous issues bearing on the exclusion for municipal bond interest were teased out and dealt with by the Bureau of Internal Revenue (Bureau) and the Board of Tax Appeals. One area of contention was whether various forms of instruments issued by municipalities to finance public improvements that limited the issuer's repayment obligation to the levying and collection of special assessments were municipal obligations. Initially, the Bureau treated such instruments as municipal obligations.  See, e.g., O.D. 447, 2 C.B. 93; O.D. 491, 2 C.B. 93; O.D. 999, 5 C.B. 102, 102-103; I.T. 1606, II-1 C.B. 69, 69-70.

In 1934 the Bureau began to distinguish among special assessment obligations primarily on the basis of what they were called. See G.C.M. 13469, XIII-2 C.B. 125, 125-126. Accordingly, in 1935, the following language was added to Article 22(b)(4)(1), "Interest upon State obligations", Regulations 86: "Special tax bills issued for special benefits to property, if such tax bills are legally collectible only from owners of the property benefited, are not the obligations of a State, Territory, or political subdivision." This language reflected the Bureau's position in G.C.M. 13469, supra, that special assessment bonds otherwise satisfying the requirements of the exclusion were exempt, see, e.g., Estate of Shamberg v. Commissioner, 3 T.C. 131 (1944), affd. 144 F.2d 998 (2d Cir. 1944); Garland v. Commissioner, 42 B.T.A. 324 (1940); Carey-Reed Co. v. Commissioner, 36 B.T.A. 36 (1937), affd. 101 F.2d 602, 603 (6th Cir. 1939); Pontarelli v. Commissioner, 35 B.T.A. 872 (1937), affd. 97 F.2d 793 (7th Cir. 1938), while special assessment bills, certificates, and warrants were not, see, e.g., District Bond Co. v. Commissioner, 113 F.2d 347 (9th Cir. 1940) (following Bryant v. Commissioner, 111 F.2d 9 (9th Cir. 1940), revg. 38 B.T.A. 618 (1938)), revg. 39 B.T.A. 739 (1939); Avery v. Commissioner, 111 F.2d 19 (9th Cir. 1940); Morrison Bond Co. v. Commissioner, 42 B.T.A. 720 (1940) (modification of opinion in response to Bryant v. Commissioner, supra); Estate of Bekins v. Commissioner, 38 B.T.A. 604 (1938); T.I. Stoner v. Commissioner,

37 B.T.A. 249 (1938); Standard Inv. Co. v. Commissioner, 36 B.T.A. 156 (1937).

In Riverview State Bank v. Commissioner, 1 T.C. 1147 (1943), following the rationale of the decision of the U.S. Court of Appeals for the Ninth Circuit in Bryant v. Commissioner, supra, we ended much of the controversy surrounding special assessment obligations by holding that the distinction in name only between special assessment bills and special assessment bonds had no bearing on the exclusion. Riverview State Bank v. Commissioner, supra at 1150.

In 1952, the Secretary deleted from the regulations the above-quoted language that had been added in Regulations 86 in 1935. See T.D. 5875, 1952-1 C.B. 15. The Treasury Decision noted that it was relieving taxpayers from a limitation in the prior regulations. This deletion was consistent with our decision in Riverview State Bank v. Commissioner, supra, in which we had rejected the drawing of a distinction between special assessment bonds and bills for purposes of the exclusion.

In Rev. Rul. 56-159, 1956-1 C.B. 609, the Commissioner, following our decision in Riverview State Bank, took the position that nonrecourse special assessment assignable certificates issued to contractors by a municipality in consideration of paving improvements were the obligations of a political subdivision, and thus exempt from income taxation. The certificates differed in name only from special assessment bills

and bonds.  Shortly thereafter, the language in question in section 1.103-1, Income Tax Regs., quoted <u>supra</u> p. 3, was added to the regulations when they were republished under the 1954 Code.  See T.D. 6220, 1957-1 C.B. 34, 38.

Our review of the judicial and administrative history of section 1.103-1(b), Income Tax Regs., impels us to conclude that the addition of the language at issue was intended to conform administrative interpretation of section 103 with our holding in <u>Riverview State Bank v. Commissioner</u>, <u>supra</u>, by recognizing that special assessment indebtedness, whether labeled bonds, bills, or otherwise, can be an obligation of a State or a political subdivision for purposes of section 103.  See <u>Independent Gravel Co. v. Commissioner</u>, 56 T.C. 698 (1971).  In <u>Riverview State Bank</u>, we declined to make any differentiation based upon the form in which a special assessment obligation was denominated in determining whether the interest on the obligation was excluded from gross income.  <u>Riverview State Bank v. Commissioner</u>, <u>supra</u> at 1150.  Following <u>Riverview State Bank</u>, we decline to hold that section 1.103-1(b), Income Tax Regs., applies in this case, merely because the Pasco County obligations in issue are called "<u>tax certificates</u>".  (Emphasis added.)

Petitioner's effort to apply section 1.103-1(b), Income Tax Regs., to the case at hand is misconceived and fundamentally flawed.  That regulation requires that special assessment indebtedness be issued "for public improvements (such as sewers,

sidewalks, streets, etc.)." Sec. 1.103-1(b), Income Tax Regs.
But, as we noted in Hernandez I, the Pasco County tax
certificates in issue in the case at hand "`are only a means
of evidencing unpaid taxes and to enable the sale thereof for
the purpose of realizing funds or current governmental
expenditures'". Hernandez v. Commissioner, T.C. Memo. 1998-46
(quoting Smith v. City of Arcadia, 185 So. 2d 762, 767 (Fla.
Dist. Ct. App. 1966)). In short, the tax certificates in issue
are not issued to finance public improvements. In each of the
above-cited special assessment cases, municipal obligations were
issued to finance particular public improvement projects. See,
e.g., Independent Gravel Co. v. Commissioner, supra at 705 ("We
have on many occasions in the past dealt with the exemption of
interest paid on instruments issued by a governmental unit in
consideration for municipal improvements") (street and sewer
improvements); Estate of Shamberg v. Commissioner, supra (bridges
and tunnels); Riverview State Bank v. Commissioner, supra (street
improvements); Carey-Reed Co. v. Commissioner, supra (street,
paving, and sewer improvements); Pontarelli v. Commissioner, 35
B.T.A. 872 (1937)(sewer improvements). In Florida, however, tax
certificates are sold solely as a means of collecting delinquent
real property taxes. Fla. Stat. Ann. sec. 197.432 (West 1989 &
Supp. 1997).

Conclusion

We hold that the tax certificates issued by Pasco County to petitioner are not covered by section 1.103-1(b), Income Tax Regs., to any extent.  We reaffirm that they are not obligations of a political subdivision for purposes of section 103. Accordingly, none of the interest earned on the Pasco County tax certificates, whether attributable to special assessments or to ad valorem property taxes, is exempt from Federal income tax under section 103.

For the reasons stated, we decline to alter the result reached in our opinion reported at Hernandez v. Commissioner, T.C. Memo. 1998-46.

To reflect the foregoing,

An appropriate order
will be issued.